DOWNING, J.,
concurs and assigns reasons.
hi respectfully concur with the majority opinion out of respect for the opinion of my colleagues. Even so, the trial court was not clearly wrong in finding that grounds do not exist for the termination of W.R.’s parental rights to his children and termination of his rights is contrary to the children’s best interest.

Expectation of Improvement

In its petition to terminate W.R.’s parental rights, the Department of Social Services/Office of Community Services stated that W.R.’s parental rights should be terminated pursuant to La. Ch.C. art. 1015(5), which is set out in the majority opinion. I agree with the majority to the extent it concludes that significant efforts do not equate to substantial compliance. But OCS needs to prove more than this. It must also prove by clear and convincing evidence that “there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future[.]”
In this regard, the trial court specifically found that “since [WR.] did make numerous efforts to comply with the case plan, there exists a reasonable expectation of some significant improvement.” In so finding, the trial court credited the testimony that W.R. made efforts to obtain housing, but OCS did not provide requested assistance. Nor did it perform a requested home study of W.R.’s mother’s home. The trial court credited |«W.R.’s testimony regarding his employment and his efforts to remain employed. W.R. participated in psychological evaluations and completed parenting classes. The trial court found that W.R. visited and attempted to visit his children on numerous occasions. Consequently, the trial court found that while W.R. “did not fully comply in every area, one hundred percent, he did make significant efforts and strives in ah the areas mentioned, such as housing, employment, parenting classes!.]” Contradictory evidence exists on some of these issues, but the trial court’s determinations of credibility and findings of fact should not be reversed on appeal unless they are clearly wrong,[1] which they are not.
In determining that a reasonable expectation of improvement exists, the trial court found that “[i]n addition to his compliance somewhat with his case plan!,] the testimony of Celia Mallard indicated that there was some compliance and there was some hope of reformation. There was some expectation that he will be able to comply.” Ms. Mallard is a licensed social worker and an expert in the field of clinical social work referred by OCS who last saw W.R. approximately three months prior to the trial of this matter.
Ms. Mallard’s ultimate recommendation was that W.R. be given six months “to prove that he could consistently maintain a job, get back on track with substance abuse and find a place that would be suitable for his family.” Her testimony reveals the following:
She met with all three children. She observed that W.R. “had great interest in his children and his children interacted *1166 with him in a positive way.” In connection with taking his children back, Ms. Mallard stated: | /Initially he appeared to be on target at the time that we met. He wasn’t finished....”
Speaking of the times she met with W.R., she continued: “And at that time he pretty much was very cooperative with everyone involved and appeared to be meeting expectations at the time and what I mean by that is that he was involved in the parenting classes offered by Discovery and also at the time, I think he was attending substance abuse sessions at the local church. He also had a job at that time he said and appeared to have one when he showed up for those visits. Ms. Mallard observed that at the time of their last meeting,” [t]he only real thing that stood out is the fact that he had not yet secured adequate housing for his children during that last session.
Regarding the children, she stated, “I think [W.R.] tried his best to engage them in conversation and activity, paid a lot of attention to what was going on at school, was it all positive and I felt the kids’ behavior uh, was pretty much normal given the length of time of the visit which was an hour, two times it was an hour; I think the last time was abbreviated.”
Regarding the oldest child, she recommended that visits be suspended temporarily because of the problems she was having “moving from school to school and from foster home to foster home.”
Regarding W.R.’s likelihood of success in achieving the plans set out for him, Ms. Mallard affirmed: “I think [W.R.] is perfectly capable of doing that, if he wants — if he really wants to do that. I don’t see anything that would stop him from — from doing those things that were required of him.”
Despite this prognosis, OCS did not allow W.R. the six months suggested to firm up his compliance with OCS’s requirements.
| ¿Further, the trial court assessed as good the expectation of W.R.’s reformation. The trial court observed: “A reasonable expectation of your reformation is found to exist if a parent has cooperated with the state officials and has shown some improvement although there are still some problems that exist and this is what we find in [W-R-’s] situation.” See In re B.M., 08-0996, p. 8 (La.App. 1 Cir. 10/31/08), 994 So.2d 156 (Table) (unpublished). This rule is consistent with La. Ch.C. art. 1036(D)(3) as set out in the majority opinion. See Id.
Considering all these factors, together •with the trial court’s reasonable factual findings and credibility calls, the trial court was not clearly wrong in finding that OCS failed to establish the grounds necessary to terminate W.R.’s parental rights.

Best Interest

Under the particular facts of this case, if grounds for termination were to exist, it is still in the children’s best interest for W.R. to retain his parental rights. These children -will be 15, 13, and 11 this year. They suffer learning and behavioral deficiencies. How is making orphans of them in their best interest?
The trial court did not rule on best interest of the children since it found that OCS had not proven grounds for termination. None of the parties addressed best interest in their briefs. Even so, in the transcript, OCS suggested no ready or possible adoptive placement for these children. If a loving, stable adoptive home were available, I could possibly consider otherwise. If W.R. were not interested in his children, I could possibly consider otherwise. But the trial court found and the record supports that W.R., though a very imperfect parent, loves and is committed to his children. If the children’s lives were disrupted by W.R.’s continued *1167 | ^involvement, I could perhaps consider otherwise, but he has a good relationship with the two younger children. And while the oldest child does not presently want to see her father, nothing in the record suggests that W.R. exacerbates her behavioral problems. He will be there if and when she is ready.
Dismissing OCS’s petition to terminate W.R.’s parental rights does not mean that the children are to be returned to him before he is ready to reassume the full responsibilities of parenthood. The children will remain in their two respective foster homes until such time or until they reach the age of majority. OCS can file a new petition for termination of W.R.’s rights if conditions deteriorate and if termination becomes the best interest for the children.
But leaving the children in the foster care system with no parent when they have one committed to them, albeit imperfectly, does not seem to be in their best interest.

. See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 883 (La.1993), quoting Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).